GEORGIANA MOSES, plaintiff in error, *vs.* THE BROOKLYN LIFE INSURANCE COMPANY, defendant in error.

Where insurance was effected in a mutual life insurance company on the life of the husband of complainant, for her benefit, upon the ten year plan, with the option to the assured that after two annual payments, should she wish to discontinue, the company will issue to her a paid up policy for as many tenths of the amount originally insured as there have been annual premiums paid in cash, and the premiums were paid part in cash and part in notes, with the stipulation that the dividends in the profits should be applied to the payment of the notes:

*Held,* That the assured was not entitled, after the payment of the second annual premium as aforesaid, to a paid up policy for two-tenths of the amount originally insured, until the liquidation in cash of the notes given in part of premiums, after crediting thereon the dividends already accrued.

Life insurance.   Premiums.   Before Judge JAMES JOHNSON.   Muscogee Superior Court.   October Term, 1872.

Complainant filed her bill against the defendant, in which she says:

On the 20th of June, 1868, the defendant made a policy of insurance on the life of her husband, Raphael J. Moses, for the benefit of her and her children by him.   Defendant is a corporation of New York, authorized to make such insurance, and has an agency in Columbus, Georgia.   By the policy, defendant, in consideration of $648 75 then paid, and of the annual payment of the same sum on or before the 20th of June in each year for ten years, insured the life of said Raphael J. in the sum of $15,000 00 for the term of his life, with participation in profits, to be paid in sixty days after notice of his death.   It was stipulated therein that if the policy should cease or become void, she should be liable to pay the amount of all notes for premiums remaining unpaid, except the balance remaining unpaid on the note taken for part premiums, and made payable at twelve months from date, and this note was to be canceled on the surrender and cancellation of the policy.   It was also stipulated that if, after two annual payments, she should wish to discontinue, the defendant would

issue to her a paid up policy for as many one-tenths of the amount originally assured as there had been annual premiums paid in cash. On 20th of June, 1868, she paid defendant $648 75, as stated in policy, of which sum $432 40 was in cash, and $212 25 in her note, due at twelve months, which was taken and considered by the defendant as cash. On 20th of June, 1869, the same thing was repeated. The defendant had the right to apply plaintiff's share of the profits to the satisfaction of said notes, and was willing to receive them as cash and rely for their payment on her share of the dividends, and did so receive them. On 5th of April, 1870, she gave notice to defendant that she, having completed two annual payments of premiums, desired to discontinue, and requested defendant to issue her a paid up policy for as many tenths of $15,000 00 as she had paid annual premiums in cash; and she offered to surrender the said policy on the cancellation by defendant of said two notes, and the issuing to her of a paid up policy for $3,000 00—*i. e.,* two-tenths of $15,000 00. Defendant refused the request, insisting that it was not bound to comply with it until she had paid the two notes in cash, not even offering to allow her a credit on them for her share of the profits made by her stock. These amounted, in 1868 and 1869, to forty per cent., and in same proportion for the past part of 1870. She offers to deliver to defendant said policy, canceled, for a paid up policy of $3,000 00.

Prayer, that defendant may make to her a paid up policy of $3,000 00 and deliver to her said two notes, canceled, and may receive from her the present policy, canceled, and in default thereof, that defendant may pay her such damages as shall be equal to the value of such a paid up policy.

The answer of the defendant was substantially as follows:

Admits the making of the policy, but denies that it was made in Georgia, and says that it was made in New York. Had an agent in Columbus, Georgia, authorized to receive applications for insurance and forward them to defendant in New York, and to receive money and notes for premiums and to deliver policies, but not to make any contract of insurance

or to change any made by defendant. To this agent the application for the policy was made, on one of the printed forms of the defendant, which was sent by the agent to New York, and there the president and secretary of the defendant made out and signed the policy and sent it to the agent in Columbus, who was authorized to deliver it to plaintiff on payment of the premium, and giving the notes due thereon according to the terms of the policy. When the policy was issued, defendant was in the practice of loaning one-third of the annual premium to the policy holder, if desired, which loan was permanent during the time the policy was in force. For this loan the party gave notes, payable at twelve months from dates, which were renewed annually, and increased by adding one-third of the premiums as they became due. The interest on such notes was payable in advance, in cash, so that no more than the principal would ever become due on them. In said printed applications are these questions: " 4. How do you wish to pay the premiums? If all cash, state if annually, semi-annually or quarterly? If one-third note and two-thirds cash, state it so?" The mode was optional with the applicant. If the applicant desired to pay two-thirds cash and one-third note, and to pay the cash part quarterly, it was the practice of the defenlant to take a "loan note" for the one-third due in twelve months, and to divide the two-thirds cash payments into four equal amounts—one-fourth payable on delivery of the policy, and the other three-fourths in three, six and nine months. The interest on the loan note and the last three quarterly payments was paid in advance. In this present application the plaintiff and her husband answered that they wanted to pay the premiums in one-third note and two-thirds cash, and the cash in quarterly payments, to which defendant agreed, and such is the contract in reference to said policy. The amount of premium was $648 75, to be annually paid in advance for ten years. Accordingly, said Raphael J. gave his note for one-third of said amount at twelve months. The balance was divided into four parts, of which one was paid in cash, and the other in notes at three, six and nine

Moses *vs.* The Brooklyn Life Insurance Company.

months. Interest was paid in cash on all the notes. The three cash notes were all paid as they fell due until the next annual payment, at which time the said loan note was taken up and a new note given, including the one-third of the premium for the second year. The interest on this note was then paid in cash, and also one-fourth of the cash payment of the second year, and cash notes given for the other three-fourths at three, six and nine months, and interest paid on them. The following cash payments were made on said policy:

| | | |
|---|---:|---:|
| 1868—Interest on loan........................................... | $ 15 14 | |
| Interest on cash notes..................................... | 11 34 | |
| Two-thirds payment in cash ......................... | 432 50 | |
| | | $458 98 |
| 1869—Interest on loan note................................ | $ 29 28 | |
| Interest on cash notes................................... | 11 34 | |
| Two thirds part in cash.................................. | 432 50 | |
| | | 473 12 |
| Amount in cash for both years...........................|  | $932 10 |

Of which $865 50 is for two-thirds of the premiums, $44 42 for interest on loan note, and $22 68 for interest on cash notes. If the whole premiums for both years had been paid in cash, the amount would have been $1,297 50 ; only two-thirds of this was paid in cash—$865 50. The balance ($432 50) is still due, and for which said Raphael J. gave his note, of which the following is a copy in substance:

"NEW YORK, June 20, 1869.

"Twelve months after date, for value received, I promise to pay to the (defendant) or order, $432 50, being for part premiums due on policy 4436 on life of R. J. Moses, Jr., dated ......... 186.., which policy, and all payments or profits that may become due thereon, are hereby pledged to (defendant) for the payment of the note.

(Signed) "R. J. MOSES, JR."

This note was in part payment of the premiums, but was not given or accepted as cash, but as a loan of so much of said premium ; and it was agreed by plaintiff and defendant

that if plaintiff should not pay the note at maturity the policy should become void. And further, was agreed that the profits to become due on said policy should be applied to the payment of the note. Defendant admits that this was not a temporary loan, to be paid in cash when due; but was permanent—to continue during the existence of the policy; but says plaintiff was bound to renew it annually and pay the interest in advance, adding to it every year one-third of the premium; but it was agreed that on the death of said Raphael J., the amount due on the note was to be deducted from the policy. Admits that by the terms of the policy the defendant, if it should become void, was to cancel the note on the surrender and the cancellation of the policy. This was, however, not because plaintiff was not bound to pay this note, but because defendant could afford to cancel the note, as the surrender value of the policy was equal to the note. Admits that plaintiff gave notice of a desire to discontinue and requested to have a paid up policy for two-tenths of $15,000, and that defendant refused the request because two annual premiums had not been paid in cash. Denies that the loan note was equivalent to cash or was so understood to be by either party. Offered to give such a paid up policy on the payment in cash of the two annual premiums remaining due. Even offered to issue such a policy without the payment of said note in cash, and to allow it to remain as a loan and be a lien on such policy, as it was on the original policy, to be deducted from the paid up policy when this should become due.

The plaintiff refused these offers. Insists that the note is due and entitled to no credits for profits. According to the rules and practice of the company, no policy was entitled to a dividend of profits until after two full years, and none was divided until upon the payment of the third annual premium. If this policy had been running two full years before 1868, the percentage of profits to which it would have been entitled would have been thirty-four per cent.; and for 1869, thirty-one per cent.; and for 1870, nothing, no profits being made

Moses *vs.* The Brooklyn Life Insurance Company.

in 1870. The profits of 1869 and 1870 were not earned by policies issued in those years, but by those issued two full years before. The rules and practice of the company as to sharing profits are stated in the publications of defendant. Denies that defendant agreed to accept the note as cash, or to rely on the dividends for its payment, except that it agreed to apply any such dividends that might have become payable to the payment of said note.

The jury returned the following verdict: "We, the jury, decree that the Brooklyn Life Insurance Company shall issue to plaintiff a paid up policy of life insurance for $3,000 00; the said company to hold the note of plaintiff for $432 50 less the dividends, amounting to $268 15, due from said company."

The evidence is unnecessary to an understanding of the decision, as the issues made are fully presented in the above synopsis of the pleadings.

The defendant moved for a new trial because the verdict was contrary to evidence, the charge of the Court and to law. The charge of the Court is not to be found in the record. The motion was sustained and complainant excepted.

HENRY L. BENNING, for plaintiff in error.

PEABODY & BRANNON, for defendant.

WARNER, Chief Justice.

This was a bill filed by the complainant against the defendant for the specific performance of a contract contained in a mutual life insurance policy. On the 20th of June, 1868, the defendant made a policy of insurance on the life of R. J. Moses, for the benefit of complainant and her children. By the policy, the defendant, in consideration of the sum of $648 75 then paid, and of the annual payment of the same sum on or before the 20th of June, in each year, for ten years, assured the life of the said R. J. Moses, in the sum of $15,-000 00, for the term of his life, with participation in profits,

to be paid in sixty days after notice of his death. The premium for insurance was paid part in cash and part by note. One of the conditions expressed in the policy is that, in case the said Georgiana Moses shall not pay, or cause to be paid, the premiums aforesaid on or before the day herein mentioned for the payment thereof, or any note, or notes which may be given to and received by said company in part payment of any premium, on the day or days when the same shall become due, then the policy was to be void. It is also stipulated in the policy that the dividend of profits which may become payable by virtue of this policy to the holders thereof, shall be applied towards the payment of the note taken for part payment of premiums aforesaid. It is further stipulated in the policy, that after two annual payments, should the party wish to discontinue, notice to the company being given before the next premium becomes due, the company will issue a paid up policy for as many tenths of the amount originally assured, as there have been annual premiums paid in cash. The prayer of the bill is that the defendant may be decreed to make to complainant a paid up policy of $3,000 00, and deliver to her the notes given to the company canceled, and receive from her the present policy canceled.

On the trial of the case, after considering the evidence, the jury returned the following verdict: " We, the jury, decree that the Brooklyn Life Insurance Company shall issue to the plaintiff a paid-up policy of life insurance for $3,000 00, the said company to hold the note of plaintiff for $432 50, less the dividends, amounting to $268 15, due from said company." The defendant made a motion for a new trial on the ground that the verdict was contrary to the evidence, contrary to the charge of the Court, and contrary to law; and, also, on other grounds set forth in the motion therefor. The Court granted the motion for a new trial, whereupon the complainant excepted.

In our judgment the complainant was not entitled to a decree for the paid-up policy prayed for under the contract contained in the policy, until the note given for the premium

had first been paid by the complainant, and the jury found by their verdict that there was still due the company on the premium note $164 35. The payment by the complainant to the company of the two first annual premiums, was a condition precedent to be performed on her part by the terms of the contract, before she was entitled to have issued to her by the company a paid up policy of $3,000 00. To enable the company to pay dividends from the profits, it is indispensably necessary that the assured should pay to the company the annual premiums stipulated to be paid, so as to create a fund from which profits may be derived. Each partner (if we consider the assured in the company as partners entitled to participate in the profits) should bear his or her proportion of the burden imposed on him or her by the contract, before he or she can receive the benefits which may accrue under it. Assuming that the Court charged the law correctly as applicable to the case before it (the charge of the Court not being in the record,) the verdict of the jury was contrary to law, and there was no error in granting the new trial.

Let the judgment of the Court below be affirmed.